**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **LEROY HENDERSON, JR., #27007-177,** ) | |
| Petitioner, ) | |
| ) | |
| v. ) | 3:06-CV-0797-P |
| ) | ECF |
| **DAN JOSLIN, Warden,** ) | |
| Respondent. ) | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b), and an order of the District Court in implementation thereof, this cause has been referred to the United States Magistrate Judge. The findings, conclusions and recommendation of the Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS:

Type of Case: This is a petition for writ of habeas corpus brought by a federal prisoner pursuant to 28 U.S.C. § 2241.

Parties: Petitioner is presently confined at FCI Seagoville in Seagoville, Texas. Respondent is the Warden of FCI Seagoville. The Court issued process in this case.

Statement of Case: Petitioner alleges he is being held in violation of 18 U.S.C. § 3585(a) and (b). Specifically, he asserts the Bureau of Prisons (BOP) did not give him credit for all time served on his federal sentence under § 3585(b), and did not commence his sentence when he was first received in its custody in May 2002, shortly after the imposition of his federal sentence. He further asserts that his federal sentence should run continuously until discharged.

In response to this Court's order, Respondent filed a response, asserting that Petitioner

did not exhaust his administrative remedies and, even if exhausted, his claims were meritless. Petitioner filed a reply. Thereafter, the Court issued a briefing order. Respondent filed his supplemental response with appendix, and Petitioner filed a motion to take judicial notice and a supplemental reply.

Procedural History: On April 2, 2001, while on parole on a state drug charge, Petitioner was arrested by Fort Worth police officers on a state charge for unlawful possession of a firearm by a felon. (Presentence Report (PSR) at 1 ¶ 2, attached to Respondent's Response). He was released on bond the following day. (*Id.*). On April 6, 2001, the State charge was adopted at the federal level as part of the "Safe City" program. (*Id.*). On April 11, 2001, state officials arrested Petitioner for an outstanding parole violation warrant and detained him in the Tarrant County Jail without bond. (Resp's Supp. Answer at 2 and Supp. Appx. at 10). On June 13, 2001, a federal grand jury indicted Petitioner for unlawful possession of a firearm by a felon. *See United States v. Henderson*, 4:01cr113-Y(01) (N.D. Tex., Fort Worth Div.).

Thereafter, Petitioner appeared before U.S. Magistrate Judge Bleil for an initial appearance pursuant to a writ of habeas corpus *ad prosequendum* issued on June 14, 2001. (PSR at 1 ¶ 3, and Docket #4 in No. 4:01cr113-Y(01)). At a detention hearing held on June 22, 2001, Magistrate Judge Bleil ordered Petitioner detained pending a trial, and detainers were filed by the Tarrant County Sheriff's Department and the Texas Board of Pardons and Paroles. (PSR at 1 ¶3; Supp. Answer at 2).[1]

---

[1] Respondent explains that since "the State of Texas, the arresting sovereign, maintained primary jurisdiction over the petitioner, these detainers were unnecessary. However, such detainers are not uncommon when an inmate has temporarily been released to federal custody pursuant to a writ [of habeas corpus ad prosequendum]." (Supp. Answer at 2).

2

On January 9, 2001, a jury convicted Petitioner of unlawful possession of a firearm by a felon, and on April 10, 2002, Judge Terry R. Means entered a judgment sentencing him to 84 months imprisonment and a three-year term of supervised release. *See* Judgment filed in No. 4:01cr113-Y(01). The judgment was silent as to whether the federal sentence would be concurrent with or consecutive to the remainder of the state sentence, for which Petitioner had previously been paroled.

Petitioner remained in the custody of the U.S. Marshal until he was returned to state authorities on April 23, 2002, and a federal detainer was lodged. (Appx. Supp. Answer at 3). Although Petitioner's parole was revoked on May 23, 2002, state authorities erroneously returned him to the custody of the U.S. Marshal on June 12, 2002. (*Id.*). The BOP did not discover this error until July 1, 2002, when Petitioner arrived at FCI Three Rivers, for service of his federal sentence. (*Id.*). On July 26, 2002, Petitioner was returned to the custody of the Tarrant County Sheriff's Office and remained in the custody of state authorities until completion of his state sentence on December 23, 2002. (*Id.*).

<u>Findings and Conclusions</u>: The Attorney General has the responsibility for imprisoning federal inmates, and such obligation is administratively carried out by the BOP. *United States v. Wilson,* 503 U.S. 329, 331 (1992). For offenses committed after November 1, 1987, federal sentence computation is governed by 18 U.S.C. § 3585. *Id.* at 332.

Although § 3585 does not refer to the Attorney General, it is well established that prisoners must exhaust their administrative remedies before seeking judicial review. *Id.* at 335 (prisoners may seek administrative review of the computations of their credit, *see* 28 C.F.R. §§ 542.10-542.16 (2007), and, once they have exhausted their administrative remedies, they may

pursue judicial review of these computations); *United States v. Dowling*, 962 F.2d 390, 393 (5th Cir. 1992).[2]

At the time Petitioner filed the instant petition, he had not fully exhausted his administrative remedies. The record reflects he submitted his BP-9 on May 31, 2006, several weeks after filing the petition in this case. *See* Declaration of Rebecca Edwards' attached to Respondent's Answer. Since that time and despite the alleged obstruction of administrative remedies (*see* Pet's Reply at 4-8), Petitioner has now fully exhausted his administrative remedies. (*see* Pet's Mot. to Take Judicial Notice at 1-2 and attachments). As a result, the Court need not address the exhaustion issue further.

With respect to the merits, Petitioner claims the BOP improperly designated the commencement date of his federal sentence. He argues his sentence commenced in May 2002, immediately after the imposition of his federal sentence.

18 U.S.C. § 3585 provides as follows:

(a) A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

The Fifth Circuit has explained that "[a] federal sentence begins to run on the date that a 'defendant is received into custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which sentence is to be

---

[2] The longstanding Fifth Circuit precedent also provides that a petitioner seeking relief under 28 U.S.C. § 2241 "must first exhaust his administrative remedies through the Bureau of Prisons." *Rourke v. Thompson,* 11 F.3d 47, 49 (5th Cir. 1993) (quoting *United States v. Gabor,* 905 F.2d 76, 78 n. 2 (5th Cir.1990)). *See Fuller v. Rich,* 11 F.3d 61, 62 (5th Cir.1994) (holding that a § 2241 petitioner must exhaust his administrative remedies); *United States v. Cleto,* 956 F.2d 83, 84 (5th Cir.1992) (holding that exhaustion of administrative remedies is a prerequisite to § 2241 relief).

served.'" *Leal v. Tombone,* 341 F.3d 427, 428 (5th Cir. 2003) (citing 18 U.S.C. § 3585(a)). Federal prisoners are placed in the custody of the BOP, which designates the appropriate correctional facility where the defendant shall serve out his federal sentence. 18 U.S.C. § 3621. "The phrase 'official detention facility' in § 3585(a) therefore must refer to a correctional facility designated by the Bureau for service of federal sentences, where the Bureau retains the discretion to 'direct the transfer of a prisoner from one penal or correctional facility to another.'" *Reno v. Koray,* 515 U.S. 50, 58 (1995) (quoting 18 U.S.C. § 3621(b)). An inmate could receive credit for time spent in the custody of state authorities only if the Attorney General exercises his "power granted by 18 U.S.C. § 4082 and designate[s] the involved state and local facilities as places of confinement for service of a federal sentence." *United States v. Garcia-Gutierrez,* 835 F.2d 585, 587 (1988).

    The crux of Petitioner's argument is that he was not released from state to federal authorities, but rather was in sole federal custody throughout the pendency of his federal prosecution in No. 4:01cr113. (Petition at 3-5, Petitioner's Reply at 10-13). He asserts that the State of Texas did not have a hold on him because at the time of his offense he was on Texas state parole, and that parole was no revoked until after and only as a result of his federal conviction. (Petition at 3-5, Petitioner's Reply at 10-13).

    The above contention is meritless. Petitioner overlooks that he was arrested by state authorities on two different occasions -- first on the state gun charge on April 2, 2001, and second on the state parole revocation warrant on April 11, 2001. Although federal officials adopted the state gun charge on April 6, 2001, the grand jury did not return the federal indictment until June 13, 2001. Petitioner was, thus, detained by state authorities until June 14,

5

2001, when he was turned over to the U.S. Marshal pursuant to a writ of habeas corpus *ad prosequendum*. The fact that his state charge was dismissed in toto and he was indicted in federal court for the same gun charge does not wipe out his arrest and detention on the basis of the state parole revocation warrant. Petitioner's self-serving assertion that his "state conviction was final . . . [because] no violation of the parole occurred until Petitioner was federally convicted of the instant offense" is wholly unsupported and patently frivolous. (Petitioner's Reply at 12).

Moreover, it is clear that Petitioner appeared in federal court for his prosecution in No. 4:01cr113 only on the basis of a writ of habeas corpus *ad prosequendum*, which specifically provided that he would be produced for an initial appearance as well as for "any further proceedings to be had in this cause, and at the conclusion of said proceedings to return said detainee to the above-named custodian." *See* No. 4:01cr113, docket #4, Order granting Writ of Habeas Corpus *Ad Prosequendum* filed on June 14, 2001.[3]

A federal sentence does not commence when a defendant is produced in federal court pursuant to a writ of habeas corpus *ad prosequendum* from state custody. *Vignera v. Attorney General,* 455 F.2d 637, 637-38 (5th Cir.1972) (per curiam). The Fifth Circuit has held:

> The law is clear in this Circuit that, if a defendant is in state custody and he is turned over to federal officials for federal prosecution, *the state government's loss of jurisdiction is only temporary.* The prisoner will be returned to state custody at the completion of the federal proceedings or the federal sentence if the federal government wishes to execute it immediately. *A writ of habeas corpus ad prosequendum is only a 'loan' of the prisoner to another jurisdiction for criminal proceedings in the receiving jurisdiction.*

---

[3] Respondent advises that it is not uncommon for a state authority to issue a detainers even when it possesses primary jurisdiction and an inmate has temporarily been released to federal custody pursuant to a writ of habeas corpus ad prosequendum. (Supp. App. at 2). xx

*Causey v. Civiletti,* 621 F.2d 691, 693 (5th Cir. 1980) (emphasis added) (internal citations omitted).

In this case, Petitioner's federal sentence did not commence until December 23, 2002, when state authorities finally relinquished their jurisdiction over him, and the BOP designated the correctional facility at which he would serve his federal sentence. That state authorities erroneously returned Petitioner to the U.S. Marshall in June 2002, and that the BOP erroneously designated him to FCI Three Rivers, does not alter the above conclusion. At the time of the erroneous return and designation, Petitioner was still on loan to federal authorities pursuant to the writ of habeas corpus ad prosequendum. He was subsequently returned to state authorities to serve the remaining portion of his state sentence.

Petitioner argues that he has served his federal sentence piece meal as a result of the BOP erroneous designation at FCI Three Rivers in July 2002. This argument is likewise meritless. In *Free v. Miles*, 333 F.3d 550, 555 (5th Cir. 2003), the Fifth Circuit held that there was no violation of the rule against piecemeal incarceration that results in the elongation of a prison sentence where a state prisoner on loan to federal authorities was convicted and sentenced for a federal crime, began to serve his federal sentence through a mistake of the federal authorities and through no fault of his own, was returned to state custody to complete his state sentence after serving less than his full federal sentence in federal custody, and after completion of his state sentence, was returned to federal custody to complete his federal sentence, with credit for his initial time in federal custody.

Insofar as Petitioner asserts that he should receive credit for time served in state custody, his claim, fares no better. 18 U.S.C. § 3585(b) states as follows:

> Credit for prior custody. -- A defendant is to be given credit towards the service of a term of imprisonment for any time he has spent in official detention prior to the date the

7

>sentence commences-
>(1) as a result of the offence for which the sentence was imposed; or
>(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited towards another sentence.

The mandate of Section 3585(b) is clear. A federal inmate may be given credit for any time he spent in official detention sentence only if such time has not been credited towards his state sentence. Respondent asserts, and Petitioner does not dispute, that he was given credit towards his state sentence from April 11, 2001, through December 23, 2002. (Supp. App. at 3). As a result, Section 3585 does not permit such period of time to also be used to reduce his federal sentence.

Finally, Petitioner asserts that the BOP erred in refusing to make a *nunc pro tunc* designation of his state institution as the place at which his federal sentence was being served. (Petitioner's Reply at 19). The decision as to whether to grant such a designation is within the discretion of the BOP. *See Wilson,* 503 U.S. at 331-32 (holding that the Attorney General, through the BOP determines if credit will be awarded to prisoners for time spent in custody prior to the commencement of their federal sentences). In this case, it appears the BOP exercised its discretion to deny petitioner's request for a *nunc pro tunc* designation. In the absence of any indication by the federal sentencing court that it intended for petitioner to serve his sentence concurrently with his state sentence, this decision was within the Bureau's discretion. *See Rodriguez v. Pitzer,* 76 Fed. Appx. 519, 520 (5th Cir. Aug. 7, 2003) (unpublished per curiam) (holding that in the absence of any intent by the federal sentencing court that the sentences run concurrently, the Bureau of Prisons acts within its discretion in refusing a request for a *nunc pro*

*tunc* designation).[4]

RECOMMENDATION:

For the foregoing reasons, it is recommended that the petition for writ of habeas corpus be DENIED with prejudice.

It is further recommended that Petitioner's motion to compel (Docket 3) be DENIED as moot, and that his motion to take judicial notice (Docket # 21) be GRANTED.

A copy of this recommendation will be mailed to Petitioner and counsel for Respondent.

Signed this 10th day of January, 2007.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

NOTICE

In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten days after being served with a copy of this recommendation. Pursuant to Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten-day period may bar a *de novo* determination by the district judge of any finding of fact or conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.

---

[4] On August 24, 2006, in response to a request from the Regional Director of the BOP, Judge Means clarified that in cases, like this one, where he is "aware of the possibility that a state sentence may be forthcoming by revocation of parole or probation, or that a state sentence is presently being served, [he] usually order[s] the sentence to be served consecutively." (Docket # 98 in 4:01cr113). While on occasion, he may have ordered a concurrent sentence, he stated that he saw "nothing here that would make me think that the sentence should be or should have been amde to run concurrently." (*Id.*).

9